**Willie BRYANT, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54948.**

Court of Criminal Appeals of Texas, Panel No. 2.

Sept. 20, 1978.

Thomas D. White, Houston, for appellant.

W. Jack Salyer, Dist. Atty., Bay City, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for aggravated robbery, wherein the punishment was assessed by the jury at twenty

(20) years' confinement in the Department of Corrections.

■ Initially, appellant contends the indictment is fundamentally defective and does not charge an offense against the laws of the State. Omitting the formal parts, the indictment charged:

". . . Defendant, on or about the 4th day of September, A.D.1975, and before the presentment of this indictment, in said County and State, did then and there while in the course of committing theft and with intent to obtain property of Paul Lewis, the owner of the following described property, to-wit: lawful money of the United States of America in the amount of $485.75 *without the effective consent of said owner and intent to deprive the said owner of said property,* did then and there exhibit a deadly weapon, to-wit: shotgun, and did then and there intentionally and knowingly threaten and place the said Paul Lewis, the owner of said property, in fear of imminent bodily injury and death . . . ." (Emphasis supplied.)

Appellant argues the indictment alleges he had no intent to deprive the complainant of his property. He contends that when it states "without effective consent of said owner and intent to deprive said owner of said property" the word "without" is carried over to "intent to deprive said owner of said property" and thus alleges he did not have the requisite intent, an essential element of the offense charged. He therefore claims that the indictment is fundamentally defective although no motion to quash the indictment was filed.

The State counters with the statement that the printed form of the indictment (16–3016–Indictment Robbery/Aggravated) was prepared by Hart Graphics of Austin and is used extensively throughout the State. This, of course, would not save a fundamentally defective indictment. While the indictment form should have had the word "with" inserted before "intent to deprive the owner of said property," we cannot conclude that the appellant was misled or that the absence of such words renders the indictment fundamentally defective when the indictment is read in its entirety. The omission of the word "with" was not so essential to the certainty necessary in the description of the offense as to render the indictment void. See *Stephens v. State,* 69 Tex.Cr. 437, 154 S.W. 996 (1913). The sense of the indictment is not affected and the meaning cannot be mistaken.

■ Next, appellant challenges the sufficiency of the evidence to sustain the conviction. Appellant's counsel acknowledges that this ground of error is "weak" and we agree. The record shows that on September 4, 1975 two men with women's hose over their faces entered the Sonic Drive-In in Bay City and robbed Paul E. Lewis, the manager, of over $400.00 at gunpoint and beat him as well. Both Lewis and his wife, who was present, identified the appellant as one of the robbers. Charles Brown, a co-indictee, testified that he was with the appellant and Don Stone when the robbery was planned and a gun was obtained. He drove them near the Sonic Drive-In and saw them with their masks. He related they later appeared at a nearby bar with the money.

The appellant admitted he was in Bay City at the time in question for the purpose of attending revival meetings, but denied he had committed the robbery in question. We find the evidence sufficient to sustain the jury's verdict.

■ Appellant also contends the trial court erred in failing to grant a mistrial when the prosecutor on direct examination elicited evidence of an extraneous offense.

Detective Douglas Holland testified he investigated the robbery charged and that he had Lewis come to the city hall to view some suspects. He stated that appellant was *not in the group of suspects.* The record then reflects:

"Q Where was he?

"A He was out in another room.

"Q All right, were you interrogating him on another matter?

"A Yes, sir."

The objection thereto was sustained and the jury was instructed to disregard the last question and answer. The mistrial motion was overruled after being argued in the absence of the jury. When the jury returned, the court again instructed the jury to disregard.

Appellant cites no authority to support his contention, and we conclude the instruction of the trial court was sufficient to cure the error, if any.

In another ground of error, appellant re-urges the contention discussed above and points to Holland's testimony on re-direct examination that during his investigation of the instant case he picked up several people with a history of armed robbery and brought them in for questioning. There is nothing to show that the appellant was one of those "people." Further, there was no objection made and nothing is presented for review.

■ Appellant next contends the State committed reversible error when it failed to make a full disclosure of the agreement between it and the accomplice witness Charles Brown.

The record shows that co-indictee Brown was granted immunity from prosecution for the instant robbery in the presence of the jury prior to his testimony. On cross-examination, he readily admitted he had been released on a $100,000.00 bond, but that he didn't know what happened, "I was in jail and all I know I got out." He had not paid anyone to make the bond. Brown further related he had been on probation and he had been promised his probation would not be revoked if he testified for the State. He denied that anything else had been promised him. He was thoroughly cross-examined on the matter.

Now on appeal appellant claims that after time for completing the appellate record had elapsed "evidence is bubbling to the surface to the effect there was an additional agreement with regard to the probation

and the release of Charles Brown . . .." Just what additional agreement there could have been with regard to the probation and release is not asserted. There is certainly nothing in the record to support appellant's claim. We find no motion or request by appellant for any additional information and no basis or evidence that the State should have disclosed information without request. There is no indication of suppression of evidence. Appellant's contention is overruled.

■ Appellant further contends the court "erred in permitting the prosecutor to show the police had had the fingerprints of appellant for about six (6) years prior to his trial."

On direct examination, the appellant testified that after his arrest in the instant case the police had taken his fingerprints and had had them for six months, and that he had no objections to the police trying to match them with fingerprints taken from the Sonic Drive-In. Then on cross-examination the prosecutor asked:

"Q   Now, you stated to your lawyer just then and this Jury that the police had fingerprints for about six months?

"A   For about six months.

"Q   Is it more likely six years?

"A   About six months."

Appellant's counsel objected, and in the absence of the jury moved for a mistrial because the prosecutor was attempting to show that the nineteen year old appellant had his fingerprints taken when he was thirteen years old and that he had been in trouble with the police for six years. The prosecutor then elicited from the appellant that he had been convicted of sale of marihuana on November 25, 1971, and then elicited other arrests and convictions, and attempted to show he had been printed when arrested on these occasions.[1] The prosecutor argued that the appellant had testified

1. There is some confusion in the record as to appellant's age. At the trial which commenced on March 22, 1976, the appellant testified that he was nineteen years old, but then added he was "born August 15, 1946." If the birth date given is correct, this would explain his conviction in 1971 as an adult.

he had never before been printed until six months before trial and he was entitled to impeach the appellant.[2] This, of course, was a misunderstanding of the testimony, but it does tend to clarify the action of the prosecutor. At the conclusion of the hearing outside the presence of the jury, the mistrial motion was overruled. When the jury was returned, the matter was not pursued.

We cannot agree that the court permitted the prosecutor to show that appellant's fingerprints had been taken six years previously. The prosecutor merely asked if it was more likely the fingerprints had been taken six years ago, and the appellant responded, "About six months." There was no showing before the jury therefore that prints had been taken six years ago. The matter was not further pursued. Under the circumstances, we cannot perceive reversible error.

■ Further, the appellant contends the conviction should be reversed because the trial judge would not instruct the jury to disregard evidence elicited by the prosecutor that he (appellant) was arrested on September 4, 1975 for an offense other than the instant robbery.

On cross-examination of the appellant, the record reflects:

"Q  Now, then, Mr. Bryant, I believe you also told this Jury that you were arrested for this robbery charge on September 4, 1975?

"A  Yes, I was arrested on September 4, 1975.

"Q  That is not correct either, is it?

"A  I was arrested September 4, 1975.

"Q  But not for robbery?"

Upon objection and without the question being answered, there was a discussion at the bench, and without the appellant obtaining a ruling on the objection, the interrogation continued. The appellant denied being served with an arrest warrant on the

instant robbery, but thereafter a stipulation was entered that appellant was charged with and an arrest warrant served on him on September 5, 1975, for the instant robbery offense. We find no request that the jury be instructed to disregard the prosecutor's unanswered question. No reversible error is presented.

■ Next, appellant complains, again without citation of authority, that the court erred in permitting the prosecutor to show that the co-defendant Stone was already in the penitentiary.

On cross-examination of the appellant, the record reflects the following:

"Q  You have known Charles Brown and Don Stone most of your life?

"A  Yes sir, I have.

"Q  We know where Charles Brown is, where is Don Stone?

"A  From my knowledge, he is in the County jail.

"Q  Isn't it true that he is in the penitentiary?

"MR. WHITE (defense counsel): We object to that. My gosh, may we approach the bench on that?"

Thereafter, in the absence of the jury, appellant's counsel moved for a mistrial on the ground that the prosecutor had injected the fact that the co-defendant Stone had already been found guilty and was in the penitentiary, which deprived the appellant of a fair and impartial trial. The mistrial motion was overruled. In the presence of the jury, the matter was not pursued. We observe that the question was never answered, and there was no showing that if the co-defendant Stone was in the penitentiary he was there confined as a result of the instant robbery. Under the circumstances, there is no reversible error.

■ Lastly, appellant complains the court erred in failing to instruct the jury to disregard the testimony of Charles Brown, an accomplice witness, that appellant and Stone "went on and pulled the job."

2. The district attorney also argued the State's file had been made available to the defense counsel and that he knew that no fingerprints had been lifted at the scene of the robbery and that he was making a grand stand play about the appellant's willingness to have his fingerprints matched with nonexistent prints.

Brown testified he had driven the appellant and Stone to the vicinity of the robbery scene. On direct examination, the following occurred:

"Q Dropped them off on the corner?

"A The corner from the Sonic Drive-In. I continued and went on to the Cadillac Bar and they went on and pulled the job."

Thereafter, appellant's counsel objected and requested the jury be instructed to disregard the last statement. The court held its ruling in abeyance and the appellant never again renewed his request or obtained a ruling thereon. Brown, who had testified as to the planning of the robbery, the obtaining of the gun and the transportation to the scene, later related appellant and Stone appeared at the Cadillac Bar with the money. Since he was not an eyewitness to the offense, he should not have been permitted to testify "they went on and pulled the job" even though the statement was unresponsive to the question asked. However, the appellant never secured a ruling on his objection or his request for a jury instruction, and in light of all the circumstances we cannot conclude the error was reversible error.

The judgment is affirmed.